UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-81603-CV-MATTHEWMAN

UBS FINANCIAL SERVICES, INC.,
a New Jersey corporation,

    Plaintiff,

vs.

BOUNTY GAIN ENTERPRISES, INC.
a foreign corporation,

    Defendant.
_____/



FILED by _____ D.C.

APR 1 2 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff/Counter-Defendant, UBS Financial Services, Inc.'s ("UBSFS") Motion for Summary Judgment [DE 155], and Defendant/Counter-Plaintiff, Bounty Gain Enterprises, Inc.'s ("Bounty Gain") Motion for Summary Judgment [DE 156]. The Motions are fully briefed and ripe for review. The Court held a hearing on the Motions on March 24, 2017. *See* DE 173. The Court has reviewed the Motions, Responses, and Replies, the entire file in this case, and is otherwise duly advised in the premises.

### I.    BACKGROUND

Defendant Bounty Gain Enterprises, Inc. is a corporation organized under the laws of the British Virgin Islands with its principal place of business in Hong Kong. [DE 157, p. 1, ¶ 2]. Kwok Chi Cheung ("Mr. Cheung")[1] is the sole shareholder, sole director, and sole beneficiary of

---

[1] UBSFS refers to Kwok Chi Cheung as "Mr. Cheung" throughout their papers, but Bounty Gain refers to Kwok Chi

1

Bounty Gain and an authorized representative of Bounty Gain. [DE 154, p. 3, ¶15; DE 164, p. 3, ¶15]. Plaintiff UBS Financial Services, Inc. is a securities broker-dealer registered with the United States Securities and Exchange Commission and is a member of the Financial Regulatory Authority, INC. ("FINRA"). [DE 154, p. 1, ¶2; DE 164, p. 1, ¶2]. UBS International ("UBSI")[2] merged into UBSFS during December of 2009. [DE 154, p. 2, ¶6; DE 164, p. 1, ¶6]. From May 2008 through January 2010, Roger Lam ("Mr. Lam") was registered with UBSI in Hong Kong. [DE 154, p. 2, ¶9; DE 164, p. 2, ¶9]. From January 2010 through December 2012, Mr. Lam was registered with and worked for UBSFS. *Id.*

UBS AG[3] is a banking institution located in and operating under the laws of Switzerland with a branch located in Hong Kong. [DE 154, p. 1, ¶3; DE 164, p. 1, ¶3]. UBS AG is not a member of FINRA. [DE 154, p. 1, ¶4; DE 164, p. 1, ¶4]. In early 2011, Peter Ho, working for UBS AG in Hong Kong, approached Mr. Cheung about investing in Digital Domain Media Group, Inc. ("DDMG"). [DE 154, p. 2, ¶13 and p. 4, ¶23; DE 164, p. 2, ¶13 and p. 4, ¶23]. Eventually, Bounty Gain purchased $5,000,000 of DDMG stock. [DE 157, p. 3, ¶¶8-9].

Natalie Lau of CM Zurich was an agent of Bounty Gain and Mr. Cheung in regard to the DDMG shares in the name of Bounty Gain. [DE 154, p. 3, ¶22; DE 164, p. 4, ¶22]. An email chain from November of 2011 between Natalie Lau and Peter Ho includes an email from Natalie Lau to Ed Lunsford stating, "Please kindly note that Bounty Gain and Liu Shiyang has couriered to you both the stock power form and the original share certificates…For Bounty Gain, the DDMG shares has [sic] to be registered in the name of Cheung Kwok Chi." [DE 154-7, p. 1].

---

Cheung as "Mr. Cheong" throughout their papers. For consistency in this Order, the Court will refer to Kwok Chi Cheung as "Mr. Cheung," which is how the Court has referred to him previously. *See* DEs 43, 99.
[2] UBS International is not a Plaintiff.
[3] UBS AG is not a Plaintiff.

However, the shares were registered in the name "Bounty Gain Enterprises, Inc. Attn: Cliff Cheung Kwok Chi." [DE 158-15, p. 57; DE 167, p. 12].

Mr. Cheung had a customer account at UBSFS ("***0172 Account") in his individual name. [DE 154, p. 2, ¶10; DE 164, pp. 1-2, ¶7]. Mr. Lam handled the individual ***0172 Account for Mr. Cheung, along with other UBSFS representatives Charles Chiu ("Mr. Chiu") and Elaine Cheng ("Ms. Cheng"). [DE 157, p. 3, ¶ 12]. Kittie Chan (also known as Hon Heng Chan), Mr. Cheung's assistant, held a Power of Attorney for Mr. Cheung's personal account at UBSFS. [DE 154, p. 3, ¶17; DE 164, p. 3, ¶17]. Bounty Gain never had an account maintained in its own name at UBSFS or at UBSI. [DE 154, p. 2, ¶7; DE 164, pp. 1-2, ¶7]. Further, Bounty Gain never had a customer agreement in its own name with UBSFS or UBSI. [DE 154, p. 2, ¶8; DE 164, pp. 1-2, ¶7, 8].

The DDMG stock registered in Bounty Gain's name was transferred to Mr. Cheung's personal account at UBSFS on June 22, 2012. [DE 154, p. 4, ¶24; DE 157, p. 6, ¶ 26]. Mr. Cheung signed and submitted a stock power to UBSFS to effectuate this transfer. [DE 154, p. 4, ¶25; DE 164, p. 5, ¶25]. Bounty Gain never paid any compensation to UBSFS or any associated person of UBSFS for any commodities or services. [DE 154, p. 3, ¶14; DE 164, p. 3, ¶14].

On July 17, 2012, Ms. Chan requested that Mr. Lam open an account in Bounty Gain's name at UBSFS. [DE 154, p. 3, ¶18; DE 164, p. 3, ¶18; DE 165-4, p. 1]. On that same date, Mr. Lam responded to Ms. Chan's request to open a Bounty Gain account at UBSFS by sending her the documentation necessary to open a corporate account for Bounty Gain at UBSFS. [DE 154, p. 3, ¶19; DE 164, p. 3, ¶19; DE 165-4, pp. 2-54]. However, the account-opening

documents sent by Mr. Lam to Ms. Chan were never completed, executed, or returned to UBSFS by Bounty Gain. [DE 154, p. 3, ¶20; DE 164, p. 4, ¶20]. Without completion of account-opening documents, an account at UBSFS cannot be opened for a potential customer. [DE 154, p. 3, ¶21; DE 164, p. 4, ¶21].

## II. PROCEDURAL HISTORY

On or about September 10, 2014, Bounty Gain Enterprises, Inc. submitted a Statement of Claim to FINRA Dispute Resolution. [DE 154, p. 1, ¶1; DE 164, p. 1, ¶1]. On December 24, 2014, UBSFS filed its Complaint for Declaratory Judgment and Injunctive Relief against Bounty Gain in this Court. *See* DE 1. In the Complaint, UBSFS explains that it is a New Jersey-based FINRA member. [DE 1, p. 2]. UBSFS states that Bounty Gain instituted FINRA arbitration against UBSFS and is seeking upwards of five million dollars in damages, along with pre-judgment interest and costs. [DE 1, p. 3]. According to UBSFS, it never had an agreement to arbitrate with Bounty Gain, UBSFS did not consent to arbitration, Bounty Gain is not a customer of UBSFS, Bounty Gain never had a brokerage account with UBSFS, and Bounty Gain did not purchase any securities from UBSFS or receive any investment advice or guidance from UBSFS. *Id.* Consequently, UBSFS maintains that it is not required to submit to FINRA arbitration. *Id.* Therefore, UBSFS initially requested that this Court enter judgment against Bounty Gain preliminarily and permanently enjoining Bounty Gain from proceeding in any way with the FINRA arbitration, declaring that Bounty Gain's dispute with UBSFS is not arbitrable, awarding UBSFS its attorney's fees and costs associated with this action, and any other further relief the Court deems just and proper. [DE 1, p. 7].

In Bounty Gain's Answer, it alleged three affirmative defenses: failure to state a claim,

the doctrines of waiver and/or estoppel, and unclean hands. [DE 18, p. 6].

On July 9, 2015, following an evidentiary hearing, the undersigned issued a Report and Recommendation recommending that the District Judge grant Plaintiff's Motion for Preliminary Injunction [DE 7] to prevent the FINRA arbitration from going forward. *See* DE 43. On November 19, 2015, the District Judge adopted the Report and Recommendation, overruled Bounty Gain's objections, issued a preliminary injunction in favor of UBSFS, and required UBSFS to post a $25,000 security bond. *See* DE 59. The Court temporarily enjoined Bounty Gain from requiring UBSFS to participate in FINRA arbitration. *Id.* After the undersigned entered its Report and Recommendation, but before the Court issued its preliminary injunction, Bounty Gain filed an Amended Statement of Claim in the FINRA arbitration, adding Mr. Cheung individually as a party and adding Roger Lam individually as a party. *See* DE 55.

Subsequently, both parties consented to U.S. magistrate judge jurisdiction, and the case was referred to the undersigned. *See* DEs 65, 66. On April 11, 2016, the undersigned denied Bounty Gain's Corrected Motion to Set Aside Order Granting Plaintiff's Motion for Preliminary Injunction [DE 73]. *See* DE 99. The case is currently set for the 5-day trial period beginning on Monday, May 22, 2017, on UBSFS' request for a permanent injunction and declaratory judgment against Bounty Gain.[4] Both parties have filed motions for summary judgment [DEs 155, 156], which the Court will now address.

---

[4] The parties have agreed to hold Bounty Gain's Counterclaim in abeyance until after the permanent injunction and declaratory judgment claims are ruled upon by the Court. [DE 156, p. 2, n. 1]. Therefore, this Order does not address Bounty Gain's Counterclaim.

### III. UBSFS' MOTION FOR SUMMARY JUDGMENT [DE 155]

A. Motion

UBSFS filed its Motion for Summary Judgment [DE 155] and Statement of Uncontested Material Facts [DE 154] on February 24, 2017. In UBSFS' Motion, it requests that the Court enter a permanent injunction and a declaratory judgment in favor of UBSFS. [DE 155, p. 2]. UBSFS argues that, because Bounty Gain did not have an agreement in writing to arbitrate with UBSFS, and because Bounty Gain was not a "customer" of UBSFS under FINRA Rule 12200, Bounty Gain cannot force UBSFS to arbitrate. [DE 155, pp. 8-13].

According to UBSFS, the definition of customer, "as used in FINRA Rule 12200, [means] a person or entity, 'not a broker or a dealer, who purchases commodities or services from a FINRA member in the course of the member's business activities in so far as those activities are related by FINRA-namely investment banking and securities business activities.'" [DE 155, p. 10]. UBSFS alleges that Bounty Gain never purchased commodities or services from UBSFS. [DE 155, p. 13]. UBSFS claims that "Bounty Gain seeks to argue an amalgam of minutia that, in its view, demonstrates customer status," which is an improper attempt to coalesce a myriad of facts into a functional equivalent of a customer relationship. *Id.* Therefore, UBSFS contends that it has shown all of the elements of a permanent injunction, including success on the merits of its claim, and therefore this Court should enter a permanent injunction barring Bounty Gain from proceeding with the FINRA arbitration. [DE 155, pp. 13-14].

In support of its Motion, UBSFS filed a portion of the transcript of the deposition of Gene Carasick, Bounty Gain's expert witness in this case. *See* DE 155-1. Also attached to

UBSFS' Motion is correspondence between certain individuals in support of the Motion [DE 155-2], documents allegedly supporting the Motion [DE 155-3], correspondence between Kittie Chan (the assistant of Mr. Cheung) and Roger Lam (a representative of UBSFS) [DEs 155-4, 155-5], Defendant's Answers to Plaintiff's First Set of Interrogatories [DE 155-6], correspondence regarding conversion of the DDI shares to DDMG shares [DE 155-7], a portion of the deposition transcript of Elaine Cheng (a corporate representative of UBSFS) [DE 155-8], and a portion of the deposition transcript of Sherry Straley (UBSFS' Rule 30(b)(6) corporate representative)[DE 155-9].

B. <u>Response</u>

Bounty Gain filed a Response [DE 163] in opposition to UBSFS' Motion for Summary Judgment, a Response [DE 164] to UBSFS' Statement of Undisputed Material Facts, and a Declaration of David C. Silver [DE 165] with exhibits attached to oppose UBSFS' Motion for Summary Judgment. Bounty Gain contends that the evidentiary record demonstrates that a permanent injunction should not issue. [DE 163, pp. 2, 8]. Bounty Gain argues that "at the very least, a reasonable inference can be made that Bounty Gain was a UBSFS customer." [DE 163, p. 8].

Bounty Gain asserts that UBSFS rendered services to Bounty Gain by taking possession of Bounty Gain's DDMG shares in Mr. Cheung's individual UBSFS account. [DE 163, p. 9]. According to Bounty Gain, UBSFS represented "both internally and externally" that Bounty Gain was its customer. *Id.* Bounty Gain contends that the DDMG shares were properly registered in the name of Bounty Gain and not supposed to be in the individual name of Mr. Cheung, as alleged by UBSFS. [DE 163, pp. 2-3]. Further, Bounty Gain claims that UBSFS

was providing services for Bounty Gain, not Mr. Cheung, because Bounty Gain was the only one that had control over the stock, as it was in Bounty Gain's name. [DE 163, p. 10].

Next, Bounty Gain argues that UBSFS' Motion must be denied because the Court has not resolved Bounty Gain's affirmative defense regarding Bounty Gain's request for UBSFS to open an account in its name. [DE 163, p. 11]. Bounty Gain claims that it asked UBSFS (specifically, a UBSFS representative, Roger Lam) to open an account in its name multiple times but was dissuaded from opening the account, which was negligent. *Id.* Moreover, Bounty Gain asserts that "when UBSFS vetted, approved, and accepted the deposit of Bounty Gain's restricted DDMG shares into Mr. Che[u]ng's ***0172 account, UBSFS waived the arguments it now proffers." [DE 163, pp. 11-12].

According to Bounty Gain, although UBSFS rendered professional services for Bounty Gain for almost a year, UBSFS either waived its charges or never charged Bounty Gain for its services, which is why Bounty Gain never made a direct payment for services to UBSFS. [DE 163, pp. 5, 12]. Bounty Gain contends that this does not preclude it from having a customer relationship with UBSFS. [DE 163, p. 12].

Finally, Bounty Gain argues that UBSFS has not met the standard for a permanent injunction. [DE 163, p. 19]. Therefore, Bounty Gain requests that the Court deny UBSFS' Motion for Summary Judgment. [DE 163, p. 20].

C. Reply

UBSFS filed a Reply [DE 171], with attached exhibits, to Bounty Gain's Response claiming that Bounty Gain cites "a collection of inconsequential, immaterial, irrelevant and inadmissible facts," attempting to make the Court put together facts in order to create a customer

8

relationship, as warned against in *Citigroup Global Markets v. Abbar*, 761 F.3d 268, 276 (2d Cir. 2014). [DE 171, p. 1]. According to UBSFS, Bounty Gain's argument that UBSFS waived the fees Bounty Gain would have paid is meritless because any fees that were forthcoming would have been paid by Mr. Cheung from his personal account and any waiver would have been for Mr. Cheung's personal account. [DE 171, pp. 2-3]. UBSFS maintains that Mr. Cheung became the owner of the DDMG shares "by application of law" when the shares were transferred to his personal account at UBSFS along with a signed stock power. [DE 171, p. 3]. Further, UBSFS alleges that the DDMG shares were supposed to be registered in the name of Mr. Cheung, individually, when they were issued. [DE 171, p. 4].

## IV. <u>BOUNTY GAIN'S MOTION FOR SUMMARY JUDGMENT [DE 156]</u>

### A. <u>Motion</u>

Bounty Gain filed its Motion for Summary Judgment [DE 156], Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment [DE 157], and the Declaration of David C. Silver [DE 158] with various exhibits attached. In Bounty Gain's Motion, it alleges that UBSFS "intertwined Bounty Gain and Mr. Che[u]ng into one client acting through the ***0172 Account for the purposes of handling the DDMG transaction; and Bounty Gain/Che[u]ng are entitled to seek resolution in arbitration for the harm caused by UBSFS and its representatives arising from the transaction." [DE 16, p. 4].

First, Bounty Gain argues that there is a liberal federal policy favoring arbitration and that any doubts concerning the scope of aribtrable issues should be resolved in favor of arbitration. [DE 156, p. 5].

Second, Bounty Gain claims that UBSFS' arbitration provision is broadly written and

should encompass the instant dispute between Bounty Gain and UBSFS. [DE 156, p. 6]. According to Bounty Gain, in a separate case involving UBSFS, *Maria Luisa Bernal v. UBS International*, Case No. 1:05-cv-22163-WMH in the Southern District of Florida, UBSFS argued that its mandatory arbitration clause was broad enough to cover an individual's investment vehicle, which is the opposite of what UBSFS argues in the instant case. [DE 156, p. 7].

Third, Bounty Gain contends that, although it does not have a written agreement to arbitrate with UBSFS, arbitration of its claims is warranted under the three exceptions recognized by the Eleventh Circuit: equitable estoppel, a sufficiently close relationship between the signatory and non-signatory defendants, and third-party beneficiary status. [DE 156, p. 8]. Bounty Gain argues that UBSFS should be estopped from arguing that it should not be forced to arbitrate with Bounty Gain because it took the exact opposite position in a similar case, *Maria Luisa Bernal v. UBS International*, Case No. 1:05-cv-22163-WMH in the Southern District of Florida. [DE 156, p. 9]. Bounty Gain also argues that there is a sufficiently close relationship between Mr. Cheung and Bounty Gain to require UBSFS to arbitrate with both parties because Mr. Cheung was the sole shareholder, sole director, and sole beneficiary of Bounty Gain. [DE 156, pp. 12-13]. Finally, Bounty Gain asserts that it is a third-party beneficiary of the relationship between UBSFS and Mr. Cheung because UBSFS knew that it was going to liquidate the stock owned by and registered in the name of Bounty Gain. [DE 156, p. 14].

Therefore, Bounty Gain asks the Court to enter summary judgment in its favor and compel UBSFS to submit to FINRA arbitration with Bounty Gain. [DE 156, p. 15].

Attached to the Declaration of David C. Silver is the full transcript of David Paulukaitis' (the expert witness of UBSFS) deposition [DE 158-1], a portion of the deposition transcript of

Brad Eavenson (DDMG's outside counsel) [DE 158-2], a portion of the deposition transcript of a UBSFS corporate representative, Elaine Cheng [DE 158-3], a portion of the deposition transcript of UBSFS' designated Rule 30(b)(6) corporate representative, Sherry Straley [DE 158-4], a portion of the deposition transcript of a UBSFS corporate representative, Joseph Cassidy [DE 158-5], a portion of the deposition transcript of a UBSFS corporate representative, Steven Infante [DE 158-6], Deposition Exhibit #16 [DE 158-7], Deposition Exhibit #23 [DE 158-8], Deposition Exhibit #24 [DE 158-9], Deposition Exhibit #29 [DE 158-10], Deposition Exhibit #30 [DE 158-11], Deposition Exhibit #42 [DE 158-12], Deposition Exhibit #49 [DE 158-13], Deposition Exhibit #51 [DE 158-14], UBSFS' Response to Defendant's First Request for Admissions [DE 158-15], the Motion to Compel Arbitration filed in *Maria Luisa Bernal v. UBS International* in the Southern District of Florida, Case No. 1:05-cv-22163-WMH [DE 158-16], the Reply in support of the Motion to Compel Arbitration filed in *Maria Luisa Bernal v. UBS International* in the Southern District of Florida, Case No. 1:05-cv-22163-WMH [DE 158-17], Bounty Gain's Amended Statement of Claim in the FINRA arbitration [DE 158-18], a chart comparing the claims from the original Statement of Claim to the Amended Statement of Claim in the FINRA arbitration [DE 158-19], documents produced by UBSFS Bates labeled UBS 0401-0402 [DE 158-20], documents produced by UBSFS Bates labeled UBS 1920-1924 [DE 158-21], and documents produced by UBSFS Bates labeled UBS 3545-3546 [DE 158-22].

B. Response

UBSFS filed an Opposition Memorandum to Defendant's Motion for Summary Judgment [DE 167] and Response [DE 166] to Bounty Gain's Statement of Undisputed Material Facts, with attached exhibits. First, UBSFS argues that, while federal policy does favor arbitration,

that policy does not apply when the issue before the Court is whether the parties ever entered into an arbitration agreement. [DE 167, p. 4]. Because UBSFS and Bounty Gain did not enter into an arbitration agreement, UBSFS claims that Bounty Gain cannot force UBSFS to arbitrate. [DE 167, p. 5]. Second, UBSFS contends that the agreement between UBSFS and Mr. Cheung does not extend to Bounty Gain. *Id.* Further, UBSFS alleges that the *Bernal* case Bounty Gain discusses in its Motion is distinguishable because the plaintiff in that case had signed an arbitration agreement in regard to the account that she was challenging in her complaint. [DE 167, pp. 5-6]. Third, UBSFS argues that the Florida doctrine of equitable estoppel does not apply in this case because Florida law does not apply to this case. [DE 167, pp. 6-7]. Fourth, UBSFS claims that Bounty Gain and Mr. Cheung are different, and the 2009 agreement signed between UBSFS and Mr. Cheung does not indicate that it was for the benefit of Bounty Gain in any way. [DE 167, pp. 9-10]. According to UBSFS, the fact that Bounty Gain and Mr. Cheung have a close relationship does not provide a basis to force UBSFS to arbitrate with Bounty Gain. [DE 167, pp. 10-11]. UBSFS alleges that it accepted the DDMG shares into Mr. Cheung's account on behalf of Mr. Cheung, not on behalf of Bounty Gain. [DE 167, p. 13]. Finally, UBSFS asserts that Bounty Gain's argument that it was a third-party beneficiary of the relationship between UBSFS and Mr. Cheung is flawed because Florida law does not apply. [DE 167, p. 14]. Moreover, UBSFS argues that Mr. Cheung is pursuing FINRA arbitration under the same claims Bounty Gain makes in this case; however, Bounty Gain and Mr. Cheung cannot both recover damages from these claims. [DE 167, p. 15].

C. Reply

Bounty Gain filed a Reply Memorandum in Further Support of its Motion for Summary

12

Judgment [DE 169] and Declaration of David C. Silver [DE 170] with attached exhibits. According to Bounty Gain, equitable estoppel applies in this case under the recognized estoppel standard. [DE 169, pp. 4-5]. Further, Bounty Gain claims that its alternative estoppel theory, which is recognized by the Eleventh Circuit, requires the Court to analyze the close relationship between Bounty Gain and Mr. Cheung. [DE 169, pp. 5-6]. Bounty Gain alleges that UBSFS had no basis to believe that it was acting for Mr. Cheung individually and not Bounty Gain. [DE 169, p. 7]. Bounty Gain contends that UBSFS treated Bounty Gain's and Mr. Cheung's interests in the DDMG stock and the ***0172 account as one and the same. [DE 169, p. 8]. According to Bounty Gain, UBSFS has "failed to present affirmative evidence to defeat Bounty Gain's Motion" and defenses. [DE 169, p. 11].

## V. HEARING ON THE MOTIONS

The Court held a hearing on the parties' summary judgment motions on March 24, 2017. *See* DE 173. UBSFS' counsel argued that the only relevant inquiry in this case is whether Bounty Gain qualifies as a "customer" of UBSFS under FINRA Rule 12200. According to UBSFS' counsel, one can only be a customer if it has an account with a FINRA member or purchases commodities or services from a FINRA member. UBSFS' counsel claimed that Bounty Gain never opened an account at UBSFS because the paperwork for opening a corporate account was not filled out and returned to anyone at UBSFS. Counsel also claimed that Bounty Gain never paid UBSFS any compensation for any commodities or services. UBSFS' counsel alleged that any waiver of fees for services was a waiver only as to Mr. Cheung individually and if there was a fee charged by UBSFS it would have been charged to Mr. Cheung individually.

UBSFS' counsel contended that Natalie Lau requested that the DDMG shares be

13

registered in the name of Mr. Cheung individually but a mistake was made when they were registered in the name of Bounty Gain. Regardless of that mistake, according to UBSFS' counsel, Mr. Cheung could transfer the DDMG shares to himself as the sole shareholder of Bounty Gain.

Counsel for UBSFS asserted that this case is not a rare instance of injustice where Bounty Gain should be considered a customer despite the fact that Bounty Gain did not have an account with UBSFS and Bounty Gain did not pay any compensation to UBSFS because there are no accusations of fraud in this case. Therefore, UBSFS' counsel argued that the Court should enter summary judgment in favor of UBSFS and against Bounty Gain in this case.

Conversely, counsel for Bounty Gain argued that there were disputed material facts because the parties disagreed on whether the DDMG shares were owned by Bounty Gain or by Mr. Cheung individually. According to Bounty Gain's counsel, the stock power did not transfer ownership of the shares to Mr. Cheung individually.

Further, Bounty Gain's counsel claimed that Bounty Gain undertook to purchase services from UBSFS by placing its DDMG shares in Mr. Cheung's account and would have paid UBSFS for its services but the fees were waived or the fees were never charged. Counsel alleged that Bounty Gain was merely a vehicle for Mr. Cheung, as the sole director and sole shareholder of Bounty Gain, to own the DDMG shares.

According to Bounty Gain's counsel, the Second Circuit's decision in *Abbar* perfectly comports with the contention that Bounty Gain is a customer of UBSFS because Bounty Gain undertook to purchase services from UBSFS and undertook to open an account at UBSFS. Therefore, Bounty Gain's counsel argued that Bounty Gain was a customer of UBSFS.

## VI. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) states in relevant part that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of demonstrating to the court by reference to the record that there are no genuine issues of material fact that need to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a moving party has discharged its initial burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," identify specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electr. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences in the light most favorable to the party opposing the motion. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998) (citations and quotations omitted). Any doubts regarding whether a trial is necessary must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

So long as the non-moving party has had an ample opportunity to conduct discovery, the non-movant must come forward with affirmative evidence to support its claim. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249-50.

## VII. DISCUSSION AND ANALYSIS

### A. UBSFS' Motion for Summary Judgment

FINRA Rule 12200 provides that parties must arbitrate if (1) there is a written agreement between the parties or arbitration is requested by a customer; (2) the dispute is "between a customer and a member or associated person of a member;" and (3) the dispute "arises in connection with the business activities of the member or the associated person." FINRA Rule 12200. The issue in this case is whether Bounty Gain was a "customer" of UBSFS in connection with the ***0172 Account. FINRA Rule 12100, titled "Definitions," defines a customer as someone that is not a broker or dealer. FINRA Rule 12100(k). The Eleventh Circuit has reasoned that the term "customer" should be interpreted in a manner consistent with the "reasonable expectations" of FINRA members. *Wheat, First Secs., Inc. v. Green*, 993 F. 2d 814, 820 (11th Cir. 1993) (abrogation recognized on other grounds).

UBSFS contends that Bounty Gain was not its customer because Bounty Gain did not have an account with UBSFS and did not pay any compensation for services to UBSFS. Bounty Gain contends that it was a customer of UBSFS under the FINRA Rules because of its connection to the ***0172 Account, arguing that UBSFS was knowingly performing services for Bounty Gain, not for Mr. Cheung individually.

16

In reviewing the parties' submissions, the undisputed evidence does show that an account was not opened in Bounty Gain's name at UBSFS. However, the evidence also arguably shows that Bounty Gain undertook to open an account at UBSFS on at least one occasion. Bounty Gain asserts that because it undertook to open an account at UBSFS, and that UBSFS allegedly provided services to Bounty Gain, Bounty Gain is a customer of UBSFS. However, UBSFS counters Bounty Gain's argument and relies in part upon emails relating to the request by Bounty Gain to open an account at UBSFS, which emails show that paperwork was sent to Ms. Chan in order to open a corporate account in the name of Bounty Gain, but that paperwork was never completed and returned to UBSFS. Bounty Gain claims that this paperwork was never returned because a UBSFS representative, Mr. Lam, represented to Bounty Gain that there was no need to open an account in its own name. At the summary judgment stage, these emails must be read in the light most favorable to the non-moving party. Therefore, although UBSFS interprets the non-return of the executed paperwork to mean that Bounty Gain did not have an account with UBSFS or did not intend to open account with UBSFS, this Court cannot so find at the summary judgment stage.

There also appears to be a question of material fact as to whether the DDMG shares should have been registered in the name of Mr. Cheung, individually, and not in the name of Bounty Gain. UBSFS has pointed to an email that illustrates that Ms. Lau requested that the DDMG shares be registered in the name of Cheung Kwok Chi. However, again, this email must be read in the light most favorable to the non-moving party. Bounty Gain asserts that the shares should have been registered in Bounty Gain's name. The DDMG shares were actually registered under "Bounty Gain Enterprises, Inc. Attn: Cliff Cheung Kwok Chi." Therefore, it

remains a question of fact in whose name the DDMG shares were to be registered.

In sum the Court finds that a final hearing is necessary to resolve the customer status of Bounty Gain and to fully address all of the issues raised in this case, including Bounty Gain's affirmative defenses. Accordingly, the Court denies UBSFS' Motion for Summary Judgment [DE 155].

B. <u>Bounty Gain's Motion for Summary Judgment</u>

In its Motion for Summary Judgment [DE 156], Bounty Gain claims that there is a general liberal federal policy which favors arbitration. [DE 156, p. 5]. While Bounty Gain is correct in this assertion, this policy does not require parties to arbitrate where there has been no agreement by the parties to do so. *Wheat*, 993 F. 2d at 817. In this case, Bounty Gain and UBSFS never executed an agreement to arbitrate. This much has been admitted by Bounty Gain in this litigation.[5] [DE 31, pp. 65, 66; DE 158, p. 7]. Further, UBSFS's agreement to arbitrate with Mr. Cheung, signed by him individually, does not, as a matter of law, encompass the instant dispute between UBSFS and Bounty Gain. Such a finding as a matter of law would set a dangerous precedent allowing any person or corporation related to a FINRA customer to force the FINRA member to arbitrate. Therefore, UBSFS cannot be forced to arbitrate with Bounty Gain based on the liberal federal policy favoring arbitration because there was no explicit agreement between Bounty Gain and UBSFS to arbitrate.

Moreover, Bounty Gain claims that UBSFS should be required to arbitrate with Bounty

---

[5] In Bounty Gain's Response [DE 164] to UBSFS' Statement of Uncontested Material Facts, Bounty Gain disputes UBSFS' statement that "Bounty Gain never had a customer agreement with UBSFS" and states that, although "Bounty Gain did not have an account maintained in its own name at either UBSFS or UBSI, Bounty Gain's investment interests were serviced through an account maintained at UBSFS in the name of Kwok Chi Cheung...Bounty Gain's sole shareholder, sole Director, and sole beneficiary (the ***0172 Account). [DE 164, p.1-2].

18

Gain according to "ordinary contract and agency principles" under Florida law. [DE 156, p. 7]. According to Bounty Gain, there are three instances recognized by the Eleventh Circuit where non-signatories to a contract may compel arbitration. [DE 156, p. 8]. However, these exceptions all depend on the facts and circumstances of each case. As the Court found above, there are disputed material facts in this case. Therefore, the Court cannot find as a matter of law that any of these exceptions recognized by the Eleventh Circuit apply in this case.

Further, UBSFS argued at the hearing on the summary judgment motions that Florida law does not apply in this case, but was not even certain which law did apply. Moreover, the parties have not carefully addressed the issue of which law applies in this case. In their joint pre-trial stipulation, due April 22, 2017, the parties shall be expected to fully address the issue of the law applicable to this case.

In sum, the Court finds, as noted previously in this Order, that there are disputed material issues of fact which preclude entry of summary judgment for either party. For these reasons, the Court denies Bounty Gain's Motion for Summary Judgment [DE 156].

## VIII. CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Plaintiff, UBSFS' Motion for Summary Judgment [DE 155] is **DENIED**. It is also hereby **ORDERED AND ADJUDGED** that Defendant, Bounty Gain's Motion for Summary Judgment [DE 156] is **DENIED**. The Court shall resolve all pending issues at the upcoming trial where it will have an opportunity to hear and consider all the relevant and probative evidence.

The case is set for the 5-day trial period beginning on **Monday, May 22, 2017** before United States Magistrate Judge William Matthewman, 701 Clematis Street, West Palm Beach,

Florida.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 12th day of April, 2017.

*William Matthewman*
WILLIAM MATTHEWMAN
United States Magistrate Judge